# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

**MILDRED S. GABRIEL,**

           **Plaintiff,**

**-vs-**                                       **Case No.  2:04-cv-472-FtM-DNF**

**COMMISSIONER OF SOCIAL
SECURITY,**

           **Defendant.**

_____

# ORDER

The Plaintiff Mildred S. Gabriel seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Disability Insurance Benefits and Supplemental Security Income payments.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision is **AFFIRMED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

## I.  Social Security Act Eligibility, the ALJ Decision, and Standard of Review

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful

-1-

activity which exists in the national economy.   42 U.S.C. §§423(d)(2), 1382a(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

On April 27, 2000, Plaintiff filed an Application for Supplemental Security Income payments and on May 31, 2001, Plaintiff filed an application for Disability Insurance Benefits asserting an alleged onset date of May 15, 1999. (Tr. p. 62-64, 322-326).  Both were denied initially and on reconsideration. (Tr. p. 30-44, 327-339).  A hearing was held on February 4, 2004, before Administrative Law Judge (ALJ) William Kogan.  The ALJ's decision dated April 20, 2004, denied Plaintiff's claims for benefits.  (Tr. p. 16-28).  At Step 1, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability.  (Tr. p. 26).  At Step 2, the ALJ found Plaintiff has Crohn's disease, anemia, fibromyalgia, and depression, impairments that are considered severe within the meaning of the Regulations. (Tr. p. 226).  At Step 3, the ALJ found Plaintiff's impairments, although severe, were not severe enough to meet or equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. p. 26).   The ALJ did not find Plaintiff's allegations regarding her limitations to be totally credible.  (Tr. p. 27).  At Step 4, the ALJ determined Plaintiff was not able to perform her past relevant work, and is approaching advanced age. (Tr. p. 27).   At Step 5, based upon a residual functional capacity (RFC) for  light work and Plaintiff's age, education, and transferable skills, the ALJ used the Medical-Vocational Rule 202.15 and the testimony of the vocational expert, and found that there existed a significant number of jobs in the national economy which Plaintiff could perform. (Tr. p. 27).  Accordingly, the ALJ found Plaintiff was not disabled. (Tr. p.27-8).  Plaintiff sought review by the Appeals Council, which denied review on

-2-

August 6, 2004. (Tr. p. 7).  Plaintiff timely sought review of this decision by the United States District Court on September 21, 2004. (Doc. 1).  The parties agree that the case is ripe for review.

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *Crawford v. Commissioner of Social* Security, 363 F.3d 1155, 1158 (11th Cir. 2004), *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Crawford,* 363 F.3d at 1158,  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Id.* at 1158-9, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Shinn ex rel. Shinn v. Commissioner of Social Security*, 391 F.3d 1276, 1282 (11th Cir. 2004),  Crawford, 363 F.3d at 1158,  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Review of Facts and Conclusions of Law

### A. Background Facts

Plaintiff was born on February 20, 1951, and was fifty-two years old on the date of the hearing. (Tr. p. 62, 350). She has a diploma from a nursing school and is a licenced practical nurse. (Tr. p. 353). Her license is not current. (Tr. p. 353). Her last job was working for an agency doing private duty work, working part-time. (Tr. p. 354). She medicated patients, fed them, and took primary care of them. (Tr. p. 355). She stopped working because she was in so much pain. (Tr. p. 355). She feels pain in her bones, joints, stomach, and at times her whole body aches. (Tr. p. 357-358). She felt weak all of the time, tired easily, had insomnia, had trouble concentrating, and had a great deal of gastrointestinal distress. (Tr. p. 355). She kept forgetting things, and was worried that she would make a mistake. (Tr. p. 357). She attributed her concentration problems to Crohn's Disease. (Tr. p. 357). She had to go to the bathroom from five to seven times a day. (Tr. p. 357). . She feels very stressed, cries often, and has been prescribed medication for depression. (Tr. p. 360, 362). Her medication affects her, and makes her thinking slow down. (Tr. p. 358). She has not been treated by a psychiatrist or psychologist or mental health professional. (Tr. p. 367).

Plaintiff uses a shower chair because she cannot stand in the shower. (Tr. p. 363). She does light cooking, but must rest while she is doing it. (Tr. p. 363). She does laundry, and cleans, but not together in the same day. (Tr. p. 363-4). Her husband helps her with the grocery shopping. (Tr. p. 364). She is able to walk two blocks, but that makes her tired. (Tr. p. 364). She can sit up to two hours as long as she can change positions. (Tr. p. 364). She can lift 20 pounds occasionally, and five pounds more frequently. (Tr. p. 365). It is painful for her to bend, squat or kneel, and she finds herself clumsy using her hands. (Tr. p. 365). Plaintiff continues to drive a vehicle, but only short

distances. (Tr. p. 351). In 2003, Plaintiff flew to New York alone. (Tr. p. 352). No special arrangements were made for her, such as a wheelchair. (Tr. p. 353). Plaintiff is married and has two minor children. (Tr. p. 354). She reads as her hobby. (Tr. p. 367).

### B. Medical History

Plaintiff has an extensive medical record which is summarized in detail in the ALJ's decision. On August 12, 1999, Plaintiff went to Borinquen Health Care Center complaining of hip pain, difficulty in ambulation, and insomnia. (Tr. p. 153,157). On March 27, 2000, Plaintiff visited the Neighborhood Health Clinic with complaints of chronic left hip pain and left sacroiliac pain. (Tr. p. 183). Plaintiff was taking Tylenol or Advil for the pain, and she was taking Immodium for her diarrhea. (Tr. p. 183). The examination found significant tenderness in her left lower quadrant. (Tr. p. 183). On May 15, 1999, Plaintiff went to the Neighborhood Health Clinic. (Tr. p. 184). Plaintiff complained of insomnia, headaches, hot flashes, and joint pain. (Tr. p. 184, 185). The doctor recommended further testing and prescribed medications for her. (Tr. p. 185).

On August 9, 200, Plaintiff went to Raymond Phillips, M.D. for gastric pain and rectal bleeding. (Tr. p. 208. His impression was a possible malabsorption problem, gastritis, and internal hemorrhoids. (Tr. p. 207). Dr. Phillips' plan was to check anti-gliadin and anti-endomysial antibody, do a stool study, and consider a colonoscopy. (Tr. p. 207).

On May 8, 2000, Plaintiff went to the Neighborhood Health Clinic for her lower abdominal pain and a bearing down sensation. (Tr. p. 182). The doctor recommended she see a gynecologist, and prescribed her medication for the pain. (Tr. p. 182). On May 13, 2000, Plaintiff went to the gynecologist who found no genocological disease. (Tr. p. 181). On May 15, 2000, Plaintiff went to

the Neighborhood Health Clinic due to her pain and the bearing down feeling worsening.  (Tr. p. 180).

The doctor thought it was related to a gastrointestinal problem, and prescribed Prevacid.  (Tr. p. 180).

On June 19, 2000, Plaintiff went to the Neighborhood Health Clinic for gastrointestinal

cramping and pain.  Her left hip pain which radiated into her left thigh and down her leg was relieved

by Naprosyn.  Her gastrointestinal problems had improved after Plaintiff pureed her food.  (Tr. p.

179).  The doctor recommended that she have x-rays taken of her left hip.  (Tr. p. 179).  On July 15,

2000, Plaintiff went to the Neighborhood Health Clinic due to her left hip discomfort.  (Tr. p. 178).

The x-ray showed some calcific tendinitis.  (Tr. p. 178).  The examination showed that Plaintiff stood

and walked antalgically[1], favoring her left lower extremity. (Tr. p. 178).  Her hip range, and lumbar

range of motion  were within normal limits.  (Tr. p. 178).  Her strength and deep tendon reflexes in

her lower extremities were normal, but she was tender to palpation over her left hip abductor tendons.

(Tr. p.178).  The doctor diagnosed Plaintiff with left hip abductor tendinitis, myofacial pain, and a

history of gastrointestinal problems.  (Tr. p. 178).   He gave Plaintiff an injection of Xylocaine with

Kenalog, and instructed her to ice the injected area.  (Tr. p. 178).  He prescribed Vioxx.  (Tr. p. 178).

On July 27, 2000, Plaintiff returned to the Neighborhood Health Clinic with complaints of

joint pain, aches, and tender toes.  (Tr. p. 176).  She only had minimal relief from Vioxx.  (Tr. p. 176).

The doctor made an assessment that Plaintiff had chronic myalgic arthralgia and wanted to conduct

further testing.  (Tr. p. 176-177).

In August 2000, Naples Diagnostic Imaging Center performed tests on Plaintiff.  (Tr. p. 211).

The doctor found mild ileus with no discrete masses, and several calcifications over the pancreas and

renal areas. (Tr. p. 211).  Also in August, Gulfshore Endoscopy Center performed tests on Plaintiff.

---

[1] A gait assumed in order to avoid or lessen pain.

(Tr. p. 215-218). A nodule was found in the esophagus. (Tr. p. 216). No evidence of significant pathology was found in the rectum, sigmoid colon, descending colon, splenic flexure, transverse colon, hepatic flexure, ascending colon, or the cecum. (Tr. p. 217). Hemorrhoids with no bleeding were found. (Tr. p. 218).

On September 25, 2000, Plaintiff went to the Neighborhood Health Clinic for a follow-up exam after being diagnosed as having Crohn's Disease. (Tr. p. 175). She had been feeling well, and wanted a refill on one of her prescription for PemPro for menopause. (Tr. p. 175). On September 27, 2000, Plaintiff went to Dr. Phillips who assessed her with having suspected Crohn's disease, myalgias and fatigue. (Tr. p. 206). He prescribed medication for her. (Tr. p. 206). On October 18, 2000, Plaintiff went to Dr. Phillips and he found that the Crohn's disease was improving, her perianal discomfort was improving, and she continued to have myalgias and fatigue. (Tr. p. 204). On October 27, 2000, Dr. Phillips reported that Plaintiff's Crohn's disease had recurrent symptoms, but her perianal discomfort was resolved. (Tr. p. 203).

On December 4, 2000, Plaintiff again went to the Neighborhood Health Clinic to get a renewal of her prescription for PemPro. (Tr. p. 174). She was doing well. (Tr. p. 174). On December 7, 2000, Plaintiff visited Dr. Phillips with complaint of muscle aches, rectal bleeding and pain in joints. (Tr. p. 2020). Dr. Phillips modified her prescriptions. (Tr. p. 202). In April 2001, Plaintiff went to Dr. Phillips complaining of diarrhea. (Tr. p. 200). On May 23, 2001, Dr. Phillips made a diagnosis of Crohn's disease, and gastro-esophageal reflux disease. (Tr. p. 199).

On September 4, 2001, Plaintiff went to Kenneth A. Berdick, M.D. (Tr. p. 225). Plaintiff complained of polymyalgias and polyarthralgias problems with an elevated sed rate. (Tr. p. 225) No joint inflamation was evident. (Tr. p. 225). Plaintiff told Dr. Berdick that she had Crohn's disease,

-7-

but has been stable on medication.  (Tr. p. 225).  She also takes medication for her gastric reflux.  (Tr.

p. 225).  Her colonoscopy from the prior year showed that her Crohn's disease was stable.  (Tr. p.

225).  Plaintiff told Dr. Berdick that she had some headaches and fatigue but had no problems with

range of motion, grip strength, finger dexterity, gait, fevers, chills or night sweats.  (Tr. p. 225).  Dr.

Berdick reported that Plaintiff watches television, does housework, cooking, and enjoys reading.  (Tr.

p. 225).  Dr. Berdick conducted a physical examination of Plaintiff and found that she was oriented,

communicated well and had no acute distress.  (Tr. p. 226).  Dr. Berdick found Plaintiff could

demonstrate full range of motion in all joints with some pain on movement.  (Tr. p. 226).  Gait, grip

strength, and finger dexterity were normal.  (Tr. p. 226).  There was some tenderness in the trapezius,

deltoid, perithoracic area,  paralumbar area, left hip, right hip, posterior thigh, and calf.  (Tr. p. 226).

No evidence of acute joint inflamation, erythema or warmth.  (Tr. p. 226).  "Obviously, activities

involving lifting, bending and carrying would exacerbate her problem, and only under sedentary

circumstance[s] does the patient state that she is comfortable."  (Tr. p. 226).

On November 6, 2001, Plaintiff went to the David Lawrence Center for depression.  (Tr. p.

230).  The intake notes reflect that Plaintiff was frail and walking with a cane.  (Tr. p. 230).  Plaintiff

was tearful and felt overwhelmed at time.  (Tr. p. 230).  Plaintiff was saddened by the ridicule she

suffered due to the manifestations of her illness, such as diarrhea and flatulence.  (Tr. p. 230).  The

Mental Status Exam found Plaintiff to have ideas of hopelessness, worthlessness,, but had age

appropriate judgement, age appropriate insight, and was cooperative.  (Tr. p. 229).   Plaintiff's mood

was depressed.  (Tr. p. 229).  Plaintiff had poor appetite, weight loss, sleep disturbance, decreased

energy, and poor concentration.  (Tr. p. 229).  Plaintiff reported that she was unable to work due to

Crohn's Disease.  (Tr. p. 228).  Plaintiff was told to utilize elective coping skills each day, practice

relaxation exercises two times per day, comply with medical treatment, and sleep six hours a night. (Tr. p. 231).

On November 12, 2001, Plaintiff returned to the Neighborhood Health Clinic for pain in her left hip, and it was noted that she was walking with a cane. (Tr. p. 171). She had a generalized fear about what was going on in her environment. (Tr. p. 171). Plaintiff's joint exam was unremarkable. (Tr. p. 171). The doctor's impression was that Plaintiff had Crohn's Disease, osteoarthritis, menopausal symptoms, and "question fibromyalgia." (Tr. p. 171). The doctor prescribed Celebrex and refilled the PemPro. (Tr. p. 171).

On January 2, 2002, Plaintiff was referred to Harald W. Lettner, Ph.D. for an assessment of her mental status. (Tr. p. 232). He used the following assessment tools: Clinical interview with mental status evaluation; Wechsler Memory Scale - III, Beck Depression Inventory, and a Review of her records. Plaintiff told Dr. Lettner that a typical day for her consists of getting up when she is able, having breakfast, a shower, and then trying to do some work around the house. (Tr. p. 233). Her husband does most of the cooking with her children's help. (Tr. p. 233). She takes naps, and lays down to rest. (Tr. p. 233). She is unable to concentrate to read, so she watches the news on the television as well as prays. (Tr. p. 233). Dr. Lettner concluded that Plaintiff had significantly reduced memory abilities which was consistent with her description of functional problems in daily life. (Tr. p. 234). Plaintiff had a number of resulting functional difficulties due to Crohn's Disease. (Tr. p. 234). Plaintiff evidenced moderate levels of depression in reaction to her illness with resulting functional difficulties, losses and disabilities. (Tr. p. 234). Dr. Lettner concluded, " Given these findings it is very unlikely that she will be able to obtain gainful employment." (Tr. p. 234). Dr. Lettner's

diagnostic suggestions were major depression, single episode, moderate Amnestic syndrome, with physical problems. (Tr. p. 234).

On January 21, 2002, Plaintiff had a rectal exam at the Senior Friendship Centers Health Service. (Tr. p. 279). No masses were found. (Tr. p. 279). Plaintiff also complained of pain in her hip and knee. (Tr. p. 279). On February 26, 2002, Plaintiff went to the Senior Friendship Centers Health Service and reported that her painful joints were better. (Tr. p. 278). Plaintiff had mild anemia. (Tr. p. 277). On February 28, 2002, Plaintiff had a gallbladder ultrasound in response to abdominal pain. (Tr. p. 284). The results were normal gallbladder, no biliary duct dilations, a questionable small echogenic focus over the right kidney which may be a small calcification, and no hydronephrotic changes or renal masses. (Tr. p. 284).

In June , 2002, Plaintiff saw Dr. Phillips for constipation, diarrhea, nausea, pain and vomiting which improved at a follow-up visit (Tr. p. 287-8). Dr. Phillips assessment was recurrent Crohn's disease, which improved with steroids. (Tr. p. 287). On May 9, 2003, Plaintiff went to the emergency room complaining of a headache with sinus congestion. (Tr. p. 307). The diagnosis was sinusitis. (Tr. p. 307). On October 14, 2003, Plaintiff went to Senior Friendship Centers Health Service, and it was noted that she felt much better in general. (Tr. p. 321).

### C. State Agency Reviews

On September 13, 2001, a state agency physician reviewed the record and completed a Physical Residual Functional Capacity Assessment (Tr. p. 248). The state agency physician found Plaintiff to be able to lift 50 pounds occasionally, 25 pounds frequently, to stand and sit for 6 hours in an 8 hour workday, and to be unlimited as to pushing and pulling. (Tr. p. 247). The state agency

physician found no postural, manipulative, visual, communicative or environmental limitations. (Tr. p. 248-250).

On December 7, 2001, a state agency physician reviewed the record and completed a second Physical Residual Functional Capacity Assessment (Tr. p. 238).  The state agency physician found Plaintiff to be able to lift 20 pounds occasionally, 10 pounds frequently, to stand and sit for 6 hours in an 8 hour workday, and to be limited as to pushing and pulling in lower extremities, specifically left foot.  (Tr. p. 239).  Plaintiff was able to climb balance, stoop, kneel, crouch, and crawl occasionally, but was never able to climb a ladder, rope or scaffold.  (Tr. p. 240).  The Plaintiff was found to have no manipulative limitations, no visual limitations, and no communicative limitations.  (Tr. p. 241).  The state agency physician found that Plaintiff should avoid extreme cold and extreme heat, but had no other environmental limitations.  (Tr. p. 242).

On February 7, 2002, a Psychiatric Review Technique was completed.  (Tr. p. 254).  The doctor found Plaintiff to have affective disorders, and her disorder was depressed mood.  (Tr. p. 254, 257).  The doctor found plaintiff to have mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace. (Tr. p. 264).  The doctor also completed a Mental Residual Functional Capacity Assessment on February 7, 2002.  (Tr. p. 268). The doctor found Plaintiff to be moderately limited as to the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to complete a normal workday and workweek without interruptions for psychologically based symptoms and to perform consistent pace without unreasonable rest periods.  (Tr. p. 268-9).  Plaintiff was not significantly limited as to other aspects of understanding, memory, or sustained concentration and persistence and was not significantly limited as to social interaction and adaption.  (Tr. p. 268-9).  The doctor

concluded that although Plaintiff may have a mental impairment of depression, he did not believe that Plaintiff's impairment was of "disabling proportions" and the doctor found that Plaintiff could be reasonably expected to accomplish most assignments found in the work environment with adequate comprehension and memory, social functioning, adaptions, concentration and persistence. (Tr. p. 270).

### D.  Specific Issues

Plaintiff raises three issues on appeal.  As stated by Plaintiff, they are: (1) the ALJ erred by not finding Plaintiff's psychological impairments severe; (2) the ALJ erred by relying on the vocational expert's response to an inaccurate hypothetical question; and (3) the ALJ erred in concluding that Plaintiff's allegations of limitations were not credible.

### 1.  Psychological Impairments

Plaintiff argues that the ALJ erred in finding that the Plaintiff's psychological impairments were not severe.  This allegation is factually incorrect.  The ALJ found that Plaintiff's "Crohn's disease, anemia, fibromyalgia, and depression, are considered 'severe' based on the requirements in the Regulations 20 CFR §§404.1520(c) and 416.920(b)."  (Tr. p. 26).  The ALJ did not find that Plaintiff's depression was not severe and therefore, did not err as to this issue.[2]

---

[2]   Within the erroneous argument that the ALJ did not find Plaintiff's psychological impairments severe, Plaintiff also argues that the ALJ did not give proper weight to the opinion of Harald W. Lettner, PhD. when finding the psychological impairment  not severe.  Plaintiff did not raise the argument concerning the weight of Dr. Lettner's opinion for any other reason.  Therefore, because the ALJ did find Plaintiff's psychological impairments severe, the Court will not address the issue of the weight of Dr. Lettner's opinion.

## 2. Vocational Expert Hypothetical

Plaintiff argues that when the ALJ posed the hypothetical question, he failed to state Plaintiff's specific limitations of her fear of her environment, the impact on Plaintiff of being ridiculed by others due to her manifestations of Crohn's Disease, her decision-making difficulties, her memory difficulties, and her frequent limitation in her ability to push and pull in the lower left extremity.

The ALJ called Joyce Ryan who is a vocational expert to testify in this case. (Tr. p. 369). Ms. Ryan familiarized herself with Plaintiff's work history. (Tr. p. 370). For Plaintiff's past work, Ms. Ryan found a licensed practical nurse to be classified as medium level of exertion, and is skilled labor. (Tr. p. 370). Ms. Ryan found Plaintiff had the transferable skills, of technical knowledge in the medical field, medical skills to care for people, use of medical equipment, planning the work of others, record keeping, and adapting to emergency situations. (Tr. p. 370).

The ALJ posed the following hypothetical:

> Assume the claimant as is set forth in 7F can lift ten pounds frequently and a maximum of 20 pounds occasionally, sit approximately six hours a day, two hours at a time and stand or walk approximately six hours a day approximately two hours at a time with the ability to push and pull in proportion to the ability to lift, could the claimant do any of her past work?

(Tr. p. 370-71). Ms. Ryan responded that Plaintiff could not return to her past relevant work. (Tr. p. 371). Ms. Ryan found that Plaintiff could perform light work or sedentary work. (Tr. p. 371). The ALJ then posed the following hypothetical:

> Next I'd like you to assume a hypothetical individual the claimant's age ranging from 48 to 52 years with the claimant's training and work experience and more than 12 years of education who as you just testified is limited to light level exertion and assume as well that this individual as is set forth in 7F should no more than occasionally climb or crouch or stoop or balance or kneel or crawl and she should avoid extremes of temperature, excessive dust and fumes and hazards such as unprotected heights and dangerous machinery. Based on those assumptions, would the claimant's skills

-13-

nevertheless transfer to and she be able to perform some other skilled or semiskilled occupations?

(Tr. p. 371). Ms. Ryan responded, "Yes, Your Honor." (Tr. p. 371) Ms. Ryan testified that Plaintiff is able to perform as a companion which is classified as light level of exertion and semiskilled, and as a first aid attendant which is also classified as light level of exertion and semiskilled. (Tr. p. 372). Ms. Ryan found that Plaintiff could perform unskilled work such as hand assembly which is classified as light level of exertion. (Tr. p. 372).

The ALJ then added the following to the previous hypothetical:

Next I'd like you to add limitations of a mental nature as found in 9F and assume that in addition to the previous limitations that were given this individual is moderately limited in her ability to understand, remember and carry out detailed instructions and in her ability to complete a normal workday in a week without an unreasonable number and length of rest periods. Those areas are moderately limited. Based on those additional assumptions, would the claimant's skills still transfer to any skilled or semiskilled occupations?

(Tr. p. 372-73). Ms. Ryan responded that she would stay with the semiskilled jobs in this situation because they do not include detailed instructions. (Tr. p. 373). Ms. Ryan was concerned about the moderate limitation of completing a normal work week, but she found at the moderate level, there would be only general absences. (Tr. p. 373).

The ALJ also asked Ms. Ryan to consider Plaintiff's testimony at the hearing to be totally credible. (Tr. p. 373). He then asked Ms. Ryan if Plaintiff's skills would transfer to any semiskilled work. (Tr. p. 373). Ms. Ryan responded that there would be no semiskilled or unskilled work available because of Plaintiff's exertional level.

Once the ALJ had determined that a claimant can no longer perform his past relevant work, the burden then shifts to the Commissioner "'to show the existence of other jobs in the national economy

-14-

which, given the claimant's impairments, the claimant can perform.'" *Jones v. Apfel*, 190 F.3d 1224, 1228-9 (11th Cir. 1999), citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). When the claimant has non-exertional impairments, such as pain, that significantly limits basic work skills, then reliance on the grids is inappropriate, and the Commissioner's preferred method of showing that a claimant can perform other jobs in the economy is through the testimony of a vocational expert. *Jones v. Apfel*, 190 F.3d at 1229. In order for the testimony of a vocational expert to constitute substantial evidence, the ALJ must pose a hypothetical question which includes all of the claimant's impairments. *Wilson v. Barnhart,* 284 F.3d 1219, 1227 (11th Cir. 2002)*, citing Jones v. Apfel*, 180 F.3d at 1229.

Plaintiff argues that the hypothetical given to the vocational expert was inaccurate because the ALJ failed to include the following: Plaintiff's generalized fears about what goes on in her environment; the impact on Plaintiff being ridiculed by others due to manifestations of Crohn's Disease; Plaintiff's significant difficulty making decisions; Plaintiff's difficulty remembering new information; Plaintiff's significantly reduced memory abilities; and her frequent limitation in ability to push and pull in the lower left extremity.

The ALJ included in his first hypothetical Plaintiff's limits as to lifting, sitting, and standing and the vocational expert found that Plaintiff could not return to her past relevant work, but could perform light or sedentary work. The ALJ then added to the hypothetical the Plaintiff's age range, her work experience and education, the residual functional capacity of light work, with limits on climbing, crouching, stooping, balancing, kneeling, crawling, temperature extremes and unprotected heights and dangerous machinery. Ms. Ryan found that Plaintiff has skills that would transfer to work other than her past relevant work. The ALJ then added the following limitations concerning mental health: an individual with limited ability to understand, remember, carry out detailed instructions, and complete

-15-

a normal workday in a week without unreasonable number and length of rest periods.  The ALJ informed Ms. Ryan that the individual was moderately limited in these areas.

Within this hypothetical, the ALJ did include an individual who was moderately limited as to memory, ability to understand, carry out detailed instructions, and to complete a normal workday in a week without a number of rest periods.  These instructions in the hypothetical would include Plaintiff's difficulty in making decisions, difficulty remembering new information, significantly reduced memory abilities, her  fears about her environment, and the impact of her being ridiculed by others.  Although the limits on pushing and pulling with left foot were not specifically mentioned in the hypothetical, the vocational expert testified that the jobs available in the economy were the jobs of first aid attendant and companion which do not have a requirement of pushing or pulling with the left foot.  Plaintiff failed to show that she is unable to perform these jobs.  *See*, *Jones v. Apfel*, 190 F.3d at 1228.  The Court finds that the ALJ posed a hypothetical question that accurately comprised all of Plaintiff's impairments and he properly relied on the vocational expert's testimony as substantial evidence.

### 3.  Credibility

Plaintiff argues that the ALJ erred in not finding Plaintiff's testimony regarding her limitations to be entirely credible.  The ALJ considered all of Plaintiff's symptoms including pain. (Tr. p. 16-28). He included her testimony that she claimed that she was disabled due to Crohn's Disease, pain, nausea, headaches, diarrhea, cramping and bloating and body weakness.  He also noted that she had pain in her joints, including her left hip, and headaches.  The ALJ thoroughly reviewed Plaintiff's complaints of pain citing the pain in her bones, joints, and whole body and how it is at times a dull pain and at other

-16-

times severe and sharp.  The ALJ reported that Plaintiff's painful joints were better in January 2002, and the symptoms for Crohn's Disease was relatively stable on medication.  The ALJ reported that Plaintiff had full range of motion in all joints with some pain but no inflamation.

In addition to the medical information, the ALJ reviewed Plaintiff's testimony concerning her daily activities which include light cooking, taking care of her personal needs, shopping, driving, and reading.  He noted that Plaintiff testified she could walk one block and back and then her leg ached. (Tr. p. 22).

The ALJ has discretion to determine that a claimant's complaints of pain or other subjective symptoms are not credible.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  But, if the ALJ rejects a claimant's testimony, he or she must articulate reasons, based on substantial evidence, for refusing to credit a claimant's subjective pain testimony. *Wilson v. Barnhart*, 284 F.3d 1219, 1225, (11th Cir. 2002), *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991).  If ALJ fails to articulate the reasons for discrediting the subjective testimony of the plaintiff, then as a matter of law, the testimony must be accepted as true.  *Wilson v. Barnhart*, 284 F.3d at 1225, citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

The ALJ included his observations of Plaintiff at the hearing in his findings.  He noted that she was clean, well-dressed, and walked quickly with a slight limp.  The ALJ reviewed Plaintiff's medical records and found she was negative for arthritis, and although she complained of left hip pain, a physical examination of the hip was unremarkable.  The ALJ noted that Dr. Berdick found no acute joint inflamation and her grip strength and gait were normal.   The ALJ found that Plaintiff has some joint pain, stomach discomfort and some depression, however her own statements concerning her impairments are not fully credible due to the discrepancies between her testimony, and the information

-17-

contained in the medical reports.  The Court finds that the ALJ's determination as to credibility is supported by the record, and the ALJ did not err in not finding the Plaintiff's testimony as to her symptoms to be fully credible.

### III.  Conclusion

Accordingly, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence.  Therefore, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk of Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Chambers in Ft. Myers, Florida this 9th  day of August , 2005.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies:

All Parties of Record

-18-